### HAZELETT STORAGE BATTERY CO. v. WESTERN BATTERY & SUPPLY CO.

### WEBSTER v. SAME.
### Nos. 1455, 1456.

District Court, W. D. Missouri, W. D.
Sept. 18, 1931.

Hadley F. Freeman, of Cleveland, Ohio, and Lynn Webb (of McCune, Caldwell & Downing), of Kansas City, Mo., for plaintiffs.

Henry S. Conrad, of Kansas City, Mo., for defendant.

OTIS, District Judge.

These cases were consolidated and tried together. The discussion herein, however, will first concern case No. 1455.

It is an action for patent infringement wherein damages and injunctive relief are prayed.

Three patents are involved, being patents numbered 1,478,786, 1,659,654, and 1,611,911.

The bill alleges ownership of these patents in the plaintiff, their validity, and infringement by the defendant.

By its answer the defendant admits plaintiff's ownership, admits the validity of the patents, and admits that it has made, used, and vended (and will so continue) articles embodying the patents.

The defense pleaded is that what it has done has been done under plaintiff's license.

The sole issue made by these pleadings is: Were the acts of the defendant, which otherwise would constitute infringement, within any license granted to defendant by plaintiff.

1. The license proved by the defendant and relied on by it was an agreement in

writing under date of August 27, 1926 (being Defendant's Exhibit 26 in the record), between the defendant and the Hazelett Manufacturing Company of Cleveland, Ohio.

This agreement purported to give the defendant the exclusive right to manufacture and sell storage batteries embodying the patents involved in this case in what was called Denver and Kansas City territory. It provided for monthly payments of royalties to the licensor. And it contained the following provision: "It is expressly understood, stipulated, and agreed that no royalty shall be due first party and payable hereunder during such time as second party may be prevented by conflicting claim of others from exercising the territorial rights and privileges under said patent rights from manufacture or sale in the territory from which said royalties would otherwise be due."

It is the contention of the defendant that, although for a considerable period it did not pay royalties, it was excused therefrom by the fact that during that time it was "prevented by conflicting claim of others from exercising the territorial rights and privileges" given it under this agreement.

It will have been noted that this agreement was not with the plaintiff, the Hazelett Storage Battery Company, but was with the Hazelett Manufacturing Company, which, the evidence shows, was a partnership composed of two individuals, C. W. Hazelett and H. L. Sherman.

Obviously it was incumbent upon the defendant, if it would avail itself of this agreement and the so-called "protection provision" set out above, first to prove that the Hazelett Manufacturing Company had authority from the Hazelett Storage Battery Company to make such an agreement containing such a "protection provision." If that was proved, it was next incumbent on the defendant to prove that it was "prevented by conflicting claim of others from exercising the territorial rights and privileges" granted it. It may appear also that its burden involved yet more than proof of these essentials.

Having in mind particularly the two essentials of the defense set up, I have gone carefully over all the testimony and the exhibits and from a full consideration thereof I make the following findings of facts:

I. The plaintiff, the Hazelett Storage & Battery Company, an Ohio corporation, is and at all times claimed in its bill herein was the sole and exclusive owner of patents numbered 1,478,786, 1,659,654, and 1,611,911.

II. For a considerable period antedating the filing of the bill and at the time thereof, the defendant was engaged and threatened to continue to engage in the manufacture and sale of machines and arts and manufactures embodying the inventions covered by the letters patent referred to in finding of fact No. I.

III. At the time of the manufacture and sale of the machines and arts and manufactures referred to in finding of fact No. II, and at the time of the filing of plaintiff's bill, the defendant had no license from the plaintiff or from any one authorized by the plaintiff to grant a license giving it (the defendant) authority to manufacture or sell machines, arts, or manufactures embodying the inventions covered by the patents referred to in finding of fact No. I.

2. The foregoing findings of facts are, of course, sufficient to dispose of this case. However, it seems to me proper to go further.

If, contrary to these findings, it be granted that the Hazelett Manufacturing Company was authorized by the plaintiff to enter into the agreement of August 27, 1926, with the defendant, has it been proved by the defendant that it was "prevented by conflicting claim of others from exercising the territorial rights and privileges under said patent rights from manufacture or sale in the territory from which said royalties would otherwise be due," so that by the protection provision it was excused from payment of royalties?

Obviously there is first to be determined what is meant by the protection clause. Does that clause mean, as defendant contends it does, that the defendant is licensed freely to sell articles embodying the plaintiff's patents without paying royalties whenever and during all the time that some unauthorized infringer to any extent may be competing in defendant's territory? Or does it mean, as is urged by plaintiff, only that the defendant is excused from paying royalties or the stipulated minimum of $1,850 per quarter in the event and while it is prevented as by injunction from operating under its license in its territory?

Of these two suggested constructions the last is the right one.

The protection clause aims to protect the licensee against what? Against a "conflicting claim of others." But what manner of

662

"claim" could conflict with the "rights and privileges" of the defendant? Seemingly only a claim that the patents were invalid or that the claimant also had a license in defendant's exclusive territory. And while such a claimant might interfere with or might lessen the value of the defendant's territorial rights and privileges merely by competing with it, it could not "prevent" defendant from exercising its territorial rights and privileges except by injunction. Certainly the protection of this provision is not aimed at a mere competing infringer. Such a one could not be said to have a "conflicting claim."

That this is the true construction to be given to the protection provision becomes the more clear from a consideration of the next succeeding provision in the agreement. Therein it is provided that, if the licensee is (by the conflicting claims of others) prevented from exercising its rights and privileges in its territory, the party of the first part (i. e., the licensor) shall purchase said equipment (i. e., equipment required by the agreement to be purchased of the licensor by the licensee) and all rights under this agreement from the party of the second part (i. e., the licensee) within ninety days of notice by party of the second part and pay to party of the second part the cost of said equipment delivered, less depreciation at the rate of 1 per cent. per annum and payable in cash.

Clearly, the theory of this provision is that, if the licensee has been prevented, that is, stopped from selling articles embodying the patents in its territory as by an injunction, it will be placed in a status quo ante by having returned to it its original investment, less depreciation. The intent expressed is that the licensee will give notice that it has been prevented from exercising its rights and privileges, whereupon the licensor must repurchase the equipment sold to the licensee. The provision is entirely inconsistent with the construction given the protection provision by the defendant that the defendant, if met with any competition by an infringer, may nevertheless continue to operate under the license, decline to give the notice which would compel the licensor to put it in status quo, and be excused from any further payment of royalties, whatever might be the extent of its operations under and profits by reason of the patents.

■ And even if any such a construction should be given the protection clause as that contended for by the defendant, if it is pos-

sible that the licensor intended to excuse the licensee from all royalty payments if it encountered in its territory any competition; however small, on the part of an infringer, it is certainly incumbent on the defendant to show that what was sold in competition with it did embody the patents covered by the license. It would be absurd to suggest that the licensor intended to excuse the licensee from the payment of royalties if another sold or offered for sale in its territory products which were designed for the same uses but which did not embody the patents covered by the license.

In connection with this discussion and explanation I make the following further findings of facts:

IV. The defendant had from the Hazelett Manufacturing Company a license agreement identified in the record as Defendant's Exhibit 26.

V. At no time was the defendant prevented by the conflicting claims of others from exercising the territorial privileges and rights granted it by the Hazelett Manufacturing Company in the license agreement known as Defendant's Exhibit No. 26.

VI. It has not been proved by the defendant that articles sold in defendant's territory in competition with the defendant by any other corporation or individual did embody plaintiff's patents, involved in this suit and embraced in the license to the defendant of the Hazelett Manufacturing Company.

■ If it were conceded that the Hazelett Manufacturing Company did have authority from the plaintiff to license the defendant, it might be urged that plaintiff's remedy against defendant would be for breach of the contract (the license), in that there was an unexcused failure to pay royalties in accordance with the terms of the license, and that the plaintiff is not entitled to an equitable remedy for infringement and incidental damages. But if this is urged, its effect is negatived by the fact (a fact conceded by the defendant) that before the commencement of this action it was no longer, even accepting defendant's theory, prevented by conflicting claims of others from selling exclusively in its territory. It still continued to sell articles embodying plaintiff's patents, although its license was terminated by the licensor and it still refused to pay royalties. It did make one tender of royalties covering a brief period, but that tender was made upon a condition which the defendant had no right to

impose and which had the effect of making the tender no tender at all.

In this connection I make the following further finding of fact:

VII. The license which the defendant had from the Hazelett Manufacturing Company was terminated by that company in accordance with the terms of the license. Such termination was before the commencement of the present action. Thereafter, and before the commencement of this action the defendant, without paying royalties and without any license, continued to manufacture and sell articles embodying plaintiff's patents.

Conclusion of Law.

I. Based upon the findings of facts hereinbefore set out, being findings from I to VII, inclusive, I conclude as a matter of law that the defendant has infringed and at the time of the commencement of this action was infringing and still is infringing and threatening to infringe plaintiff's patents numbers 1,478,786, 1,659,654, and 1,611,911, and that the plaintiff is entitled to an injunction and to damages.

The second of these two consolidated cases, Gordon A. Webster, plaintiff, v. the Western Battery & Supply Company, involves patents Nos. 1,600,668, 1,645,424, 1,-545,051, 1,531,747, 1,531,784, and 1,611,910. As to these patents also their validity is admitted by the defendant. The facts as to the operation of the defendant with respect to these patents and the defense of the defendant are the same as with respect to patents involved in case No. 1455. An additional defense, however, is made in this case, and that is a denial that the plaintiff, Gordon A. Webster, is the owner of the full and complete title to the patents involved, the defendant's answer alleging that plaintiff holds only the legal title for the benefit of the Hazelett Storage Battery Company and certain of its creditors. It is the contention of the defendant that it was not within the powers of Gordon A. Webster to institute and to prosecute this case. My view is that this contention of the defendant must be resolved against it. It is admitted that the plaintiff did hold the legal title to the patents. If he held that legal title for the Hazelett Storage Battery Company and others, there has been no showing that he was not authorized by them to bring this suit. It was tried jointly with case No. 1455, in which the Hazelett Storage Battery Company was the plaintiff. The same attorneys represented plaintiff in each case

so that it must be said that, if the plaintiff Webster required authority from the Hazelett Storage Battery Company, he had that authority, and it must be so held in the absence of any showing to the contrary.

In this case I make the following findings of facts:

I. The plaintiff, Gordon A. Webster, is and at all times claimed in his bill herein was the holder of the legal title of patents Nos. 1,600,668, 1,645,424, 1,545,051, 1,531,-747, 1,531,784, and 1,611,910 and was duly authorized to institute and maintain suits for the infringement of such patents.

II. For a considerable period antedating the filing of the bill herein and at the time thereof, the defendant was engaged and threatened to continue to engage in the manufacture of machines, and arts and manufactures embodying the inventions covered by the letters patents referred to in finding of fact No. I.

III. At the time of the manufacture and sale of the machines and arts and manufactures referred to in finding of fact No. II and at the time of the filing of the plaintiff's bill, the defendant had no license from the plaintiff as the legal owner of the patents referred to in finding of fact No. I, or from the beneficial owners of such patents, or from any one authorized by the plaintiff or the beneficial owners to grant a license giving it (the defendant) authority to manufacture or sell machines, arts, or manufactures embodying the inventions covered by the patents referred to in finding of fact No. I.

IV. The defendant had from the Hazelett Manufacturing Company a license agreement identified in the record as Defendant's Exhibit 26.

V. At no time was the defendant prevented by the conflicting claims of others from exercising the territorial privileges and rights granted it by the Hazelett Manufacturing Company in the license agreement known as Defendant's Exhibit 26.

VI. It has not been proved by the defendant that articles sold in defendant's territory in competition with the defendant by any other corporation or individual did embody plaintiff's patents involved in this suit and embraced in the license to the defendant of the Hazelett Manufacturing Company.

VII. The license which the defendant had from the Hazelett Manufacturing Company was terminated by that company in accordance with the terms of that license. Such

termination was before the commencement of the present action. Thereafter and before the commencement of this action the defendant, without paying royalties and without any license, continued to manufacture and sell articles embodying plaintiff's patents.

### Conclusion of Law.

 Based upon the findings of facts hereinbefore set out, being findings from I to VII, inclusive, I conclude as a matter of law that the defendant has infringed, and at the time of the commencement of this action was infringing and still is infringing and threatening to infringe, plaintiff's patents Nos. 1,600,668, 1,645,424, 1,545,051, 1,531,747, 1,531,784, and 1,611,910, and that the plaintiff is entitled to an injunction and to damages.

### Indicated Decree.

The plaintiff in both of the consolidated cases will prepare and submit to the court for approval and entry forms of decrees in conformity with the conclusions of law hereinbefore announced, which shall further provide for the appointment of a master to take and hear testimony concerning the amount of damages to which in the two cases the plaintiffs may be entitled.